UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED VAN LINES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DANIEL TOBIN and<br>CHRISTINE CASSON<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 04-10018-RGS<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

The defendants in the above-captioned matter, Daniel Tobin and Christine Casson (collectively the "Defendants"), hereby respond to the allegations of the numbered paragraphs of the Complaint filed by the plaintiff United Van Lines ("United" or the "Plaintiff") as follows:

### ANSWER

**Parties, Jurisdiction and Venue**

1. Defendants are without information sufficient to form a belief as to the allegations contained in paragraph 1 of the Complaint.

2. Defendants admit that they reside at 19 Paisley Park, #2. The remainder of paragraph 2 of the Complaint contains conclusions of law to which no response is required or necessary.

3. Paragraph 3 of the Complaint contains conclusions of law to which no response is required or necessary. To the extent that this paragraph contains factual aversions, the Defendants deny such factual aversions.

4. Paragraph 4 of the Complaint contains conclusions of law to which no response is required or necessary. To the extent that this paragraph contains factual aversions, the Defendants deny such factual aversions.

**Count I**

5. Defendants admit that on or about September 16, 2002 United picked up household goods at the Defendants' residence in Racine, Wisconsin for delivery to the Defendants at 19 Paisley Park, #2, Dorchester, Massachusetts by or before September 24, 2002. Defendants deny the remaining allegations contained in paragraph 5 of the Complaint.

6. Defendants admit that during the course of dealing with United, United issued numerous documents to the Defendants, including one or more bill of lading. To the extent that the remainder of this paragraph contains factual aversions, the Defendants deny such factual aversions.

7. Defendant states that the document referred to in this paragraph speaks for itself.

8. Defendants deny the allegations contained in paragraph 8 of the Complaint.

9. Defendants admit that United delivered various of their household goods to Dorchester, Massachusetts after September 24, 2002 in clear violations of its own "bill of lading" and their other representations and agreements with the Defendants. Defendants deny the remaining allegations contained in paragraph 9 of the Complaint.

10. Defendants deny the allegations contained in paragraph 10 of the Complaint.

11. Defendants admit that they paid United $6,201.16 at or about the time of the late delivery of their personal property to Dorchester, Massachusetts. Defendants deny the remaining allegations contained in this paragraph.

12. Defendants admit that they have paid no additional sums to United. Defendants deny the remaining allegations contained in this paragraph.

13. Paragraph 13 of the Complaint contains conclusions of law to which no response is required or necessary. To the extent that this paragraph contains factual aversions, the Defendants deny such factual aversions.

**Count II**

Defendants reallege and incorporate by reference paragraphs 1 through 13 of their Answer.

14. Defendants admit that, well prior to September 16, 2002, they hired United to transport and deliver their household goods from Racine, Wisconsin to Dorchester, Massachusetts. Defendants deny the remaining allegations contained in this paragraph.

15. Defendants admit that they agreed to pay to United the amount of $5,637.42 in consideration of the services to be provided by United. Defendants deny the remaining allegations contained in this paragraph.

16. Defendants admit that United has made demand upon the Defendants for money United claims to be due and owing from the Defendants. Defendants deny the remaining allegations contained in this paragraph.

17. Defendants deny the allegations contained in paragraph 17 of the Complaint.

18. Paragraph 18 of the Complaint contains conclusions of law to which no response is required or necessary. To the extent that this paragraph contains factual aversions, the Defendants deny such factual aversions.

**Count III**

Defendants reallege and incorporate by reference paragraphs 1 through 18 of their Answer.

19. Defendants admit that United agreed to transport and deliver their household goods from Racine, Wisconsin to Dorchester, Massachusetts in return for the Defendants' promise to pay to United the amount of $5,637.42. Defendants deny the remaining allegations contained in this paragraph.

20. Defendants deny the allegations contained in paragraph 20 of the Complaint.

21. Defendants deny the allegations contained in paragraph 21 of the Complaint.

22. Paragraph 22 of the Complaint contains conclusions of law to which no response is required or necessary. To the extent that this paragraph contains factual aversions, the Defendants deny such factual aversions.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff is estopped by its own actions and omissions from obtaining any of the relief sought.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim upon which relief may be granted.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff is barred by its own illegal acts from obtaining any of the relief sought.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff is barred by its own fraudulent acts from obtaining any of the relief sought.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff is completely barred from recovering any amount of alleged damages in this matter as it breached the contract and/or agreements upon which its claims are based.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

## COUNTERCLAIM

### THE PARTIES

1. Plaintiff United Van Lines, LLC, upon information and belief, is a Missouri Limited Liability Corporation with a principal place of business at One United Drive, Fenton, Missouri 63026. United is a business entity which is engaged in trade and commerce and offers services including the packing and interstate delivery of household goods.

2. Daniel Tobin and Christine Casson (the "Defendants") reside at 19 Paisley Park, #2, Dorchester, Massachusetts.

3. In anticipation of a move of their residence from Racine, Wisconsin to Dorchester, Massachusetts, the Defendants sought and obtained a competitive bid from another company engaged in the business of the interstate transport of household goods.

4. On or about July 2, 2002 a United agent, Jeffrey Cook ("Cook"), conducted a survey of the contents of the Defendants' Racine, Wisconsin residence for the purpose of preparing an estimate for United's services.

5. Cook held himself out as experienced in conducting evaluations and providing estimated moving costs, and informed the Mr. Tobin that he had other moving clients who were professors at Carthage College. Cook understood that the Defendants relied upon and trusted his expertise.

6.    Mr. Tobin walked Cook through each room of their residence and Cook seemed to carefully note the contents of each room.

7.    Defendants are both currently or formerly university English professors. Mr. Tobin pointed out to Cook their large collection of books. He specifically showed Cook their large and full bookcases in both their dining and living rooms. He also walked Cook through their basement which was likewise full of, among other things, boxes and collections of books.

8.    Cook estimated the weight of the goods to be transported to be 13,294 pounds and he estimated the cost of the move to be $5,637.42. He indicated that United would also provide packing assistance at additional cost.

9.    United submitted the lowest bid to the Defendants for moving services and, based upon their low bid, the Defendants engaged United to move their household goods.

10.   Cook served as United's principal contact with the Defendants in relation to their move. Cook asked the Defendants to inform him of any change in circumstances such as the "thinning out" of any of their possessions. Cook indicated that, in the event that the Defendants thinned out their possessions, he would provide a second, lower estimate.

11.   On or about August 9, 2002 Cook spoke with Ms. Casson who informed Cook that the Defendants had not thinned out their possessions. Cook commented that his original estimate would apply.

12.   On September 16, 2002 United employees appeared at the Defendants' Racine Wisconsin residence to collect their goods. On that date, Ms. Casson was at the Defendants' Racine residence while Mr. Tobin prepared their new Dorchester residence to receive the goods.

13.   United's employees indicated to Ms. Casson that Cook had apparently grossly underestimated the amount of household goods to be moved.

14. The moving truck brought by United's employees for the move on September 16 was too small and Ms. Casson was told that United would have to employ a second truck.

15. United's employees complained bitterly about Cook's inaccurate estimate and the amount of unanticipated work they had to perform.

16. United failed to provide the Defendants with an addendum to the estimate outlining any discrepancy in the estimated and actual weight and amounts to be shipped.

17. On September 16, 2002, United employees provided Ms. Casson with a "bill of lading" and instructed her to sign the form. They informed Ms. Casson that they would not commence the move unless she first signed the bill of lading.

18. Ms. Casson -- alone, recovering from an illness, with a home full of packed possessions and with United as the only option for moving those possessions in the near future -- signed the bill of lading as United instructed her.

19. United never provided the Defendants with any information about tariffs or additional costs, other than the additional cost for United's assistance in packing certain items - $1,052.04.

20. United, on its bill of lading, agreed that the latest it would deliver the Defendants' property to Dorchester was September 24, 2002.

21. While their possessions were in route from Racine to Dorchester, Cook called Mr. Tobin and informed him that he had grossly underestimated the amount and weight of property moved, for which he apologized.

22. United delivered one shipment of the Defendants' property to Dorchester on September 20, 2002.

23. Upon delivery of the first shipment of goods to the Defendants' Dorchester home, United required the Defendants to remit to it payment of 110% of the estimate - $6,201.16.

24. The Defendants paid to United $6,201.16 on September 20, 2002.

25. That same day, United, for the first time, informed the Defendants that United was charging them a total of $15,419.14 for the move and that United required an additional payment of $9,217.98.

26. United informed the Defendants that they based their bill on the actual weight of the Defendants' property -- 35,480 pounds.

27. Despite agreeing to deliver the Defendants' property to their Dorchester residence no later than September 24, 2002, United did not deliver all of the Defendants' property to their Dorchester residence until September 28, 2002.

28. During the course of the next sixteen months United made various attempts to collect the additional payment of $9,217.98 from the Defendants.

29. Defendants engaged in several telephone and written communications with United during this period indicating their belief that United is attempting to profit from its own incompetence or its own deceptive acts.

30. Defendants obtained from United, in April 2003, a document called a "cube sheet" purportedly containing an itemized and room-by-room breakdown of Cook's July 2, 2002 estimate. A true and accurate copy of the cube sheet is appended hereto as Exhibit 1.

31. It is apparent from the cube sheet that Cook either purposely or negligently omitted significant inventory, and even entire rooms, from his estimate of the Defendants' belongings.

32. In some instances, Cook listed on the cube sheet items that the Defendants indicated they were leaving behind rather than the items they were taking.

33. Cook failed to note the contents of an entire bedroom filled with belongings on the cube sheet.

34. Cook failed to note on the cube sheet that the Defendants' living and dining rooms contained wall-to-wall bookcases filled with books. Cook also failed to list significant inventory from the Defendants' basement, including a large number of books.

## COUNTERCLAIMS

### Count I – Deceit

35. Defendants reallege and incorporate by reference paragraphs 1 through 34 of the Counterclaim.

36. United intentionally misrepresented to the Defendants that it could and would transport the Defendants' personal property from their Racine, Wisconsin residence to their new residence in Dorchester, Massachusetts at a cost of $5,637.42.

37. United quoted this price to the Defendants in order to underbid competitors and to cause the Defendants to commit to United.

38. At the time United quoted the $5,637.42 price to the Defendants, United knew that the quote was grossly understated and that they intended to later demand a much larger sum from the Defendants at a time when the Defendants would have no other option but to use United's services.

39. Based upon United's $5,637.42 estimate, the Defendants chose United to transport their belongings from Racine, Wisconsin to Dorchester, Massachusetts.

9

40. Defendants have suffered damages as a result of United's misrepresentation to the extent that they may be obligated to remit to United any sums above and beyond the $5,637.42 estimate. Defendants have suffered additional damage as a result of United's deceit.

## Count I – Negligent Misrepresentation

41. Defendants reallege and incorporate by reference paragraphs 1 through 40 of the Counterclaim.

42. United misrepresented to the Defendants that it could and would transport the Defendants' personal property from their Racine, Wisconsin residence to their new residence in Dorchester, Massachusetts at a cost of $5,637.42.

43. United quoted this price to the Defendants in order to underbid competitors and to cause the Defendants to commit to United.

44. At the time United quoted the $5,637.42 price to the Defendants, United knew that the quote was grossly understated or was reckless or negligent with regard to the accuracy of the quote.

45. Based upon United's $5,637.42 estimate, the Defendants chose United to transport their belongings from Racine, Wisconsin to Dorchester, Massachusetts.

46. Defendants have suffered damages as a result of United's reckless or negligent misrepresentation to the extent that they may be obligated to remit to United any sums above and beyond the $5,637.42 estimate. Defendants have suffered additional damage as a result of United's misrepresentation.

## Count III – Breach of Contract

47. Defendants reallege and incorporate by reference paragraphs 1 through 45 of the Counterclaim.

48. Defendants and United reached an agreement whereby United agreed that it could and would transport the Defendants' personal property from their Racine, Wisconsin residence to their new residence in Dorchester, Massachusetts by or before September 24, 2002 in consideration for the Defendants' agreement to pay to United $5,637.42.

49. Defendants fully performed and complied with the agreement by paying to United 110% of the contract price - $6,201.16.

50. United breached the agreement by failing to deliver the Defendants property to their Dorchester residence by or before September 24, 2002.

51. United also breached the agreement by insisting that the Defendants pay an additional $9,217.98 for the contracted services.

52. Defendants have been damaged by United's breach and are entitled to the return of the $6,201.16 they paid to United and are not obligated to pay to United any additional funds.

### Count IV – Promissory Estoppel

53. Defendants reallege and incorporate by reference paragraphs 1 through 51 of the Counterclaim.

54. United promised the Defendants that it could and would transport the Defendants' personal property from their Racine, Wisconsin residence to their new residence in Dorchester, Massachusetts by or before September 24, 2002 for $5,637.42.

55. United made this promise with the intent and expectation that the Defendants would choose United as its personal property carrier over other carriers from whom the Defendants had received competitive bids.

56. Defendants relied on United's promise and rejected other competitive bids as a direct result of United's promise.

57. United is precluded from denying the existence of the terms of their agreement to transport the Defendants' personal property from their Racine, Wisconsin residence to their new residence in Dorchester, Massachusetts by or before September 24, 2002 for $5,637.42.

58. Defendants are entitled to the return of all monies in excess of 5,637.42 they paid to United and are not obligated to pay to United any additional funds.

### Count V – Unfair or Deceptive Acts or Practices – M.G.L. c. 93A

59. Defendants reallege and incorporate by reference paragraphs 1 through 57 of the Counterclaim.

60. United is engaged in trade and commerce.

61. United has engaged in unfair and deceptive acts and practices in violation of M.G.L. c. 93A, §§ 9 and 11 by, among other things, engaging in a deceptive trade practice commonly known as the "bait and switch." That is, United submitted a bid to the Defendants for the transport of their personal property from their Racine, Wisconsin residence to their new residence in Dorchester, Massachusetts by or before September 24, 2002 for $5,637.42.

62. United submitted the bid with full knowledge that it would never abide by its bid price, but submitted the bid to induce the Defendants to choose their low bid over all others.

63. Defendants chose United's bid over another bid.

64. Upon delivery of the Defendants goods to Dorchester, Massachusetts, United insisted that the Defendants pay to United 110% of the contract price - $6,201.16 or United would not release their property and insisted that the Defendants pay United an additional $9,217.98.

65. As a result of United's unfair and deceptive trade practices, the Defendants have suffered, and continue to suffer damages.

**WHEREFORE**, the Defendants Daniel Tobin and Christine Casson pray that this Court:

(a) Enter judgment against the Plaintiff and in favor of the Defendants on Count I of the Counterclaim and award all damages as are just and reasonable;

(b) Enter judgment against the Plaintiff and in favor of the Defendants on Count II of the Counterclaim and award all damages as are just and reasonable;

(c) Enter judgment against the Plaintiff and in favor of the Defendants on Count III of the Counterclaim and award all damages as are just and reasonable;

(d) Enter judgment against the Plaintiff and in favor of the Defendants on Count IV of the Counterclaim and award all damages as are just and reasonable;

(e) Enter judgment against the Plaintiff and in favor of the Defendants on Count V of the Counterclaim and award all damages as are just and reasonable, including treble their damages and all costs and attorneys' fees as allowed pursuant to M.G.L. c. 93A;

(f) Award the Defendants their costs, expenses and attorneys' fees;

(g) Grant such other and further relief as appropriate.

**DEFENDANTS DEMAND A JURY TRIAL ON ALL CLAIMS SO TRIABLE.**

Respectfully Submitted,

DANIEL TOBIN and
CHRISTINE CASSON

By their attorneys:

_____
John F. Tocci, Esq., BBO# 562139
Merson & Lee, PC
171 Milk Street, Suite 400
Boston, Massachusetts 02109
(617) 399-7800

Dated: March 11, 2004

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)(mail) on 3-11-04